## AMANDA L. TIFEL *vs.* MARY E. JENKINS ET AL.

*Bill to Vacate Deeds—Insufficient Evidence.*

Appeal from a decree of the Circuit Court of Baltimore City (STOCKBRIDGE, J.), dismissing the bill of complaint. *Affirmed.*

In this case a bill was filed in the Circuit Court of Baltimore City, by the appellant, praying to have set aside and vacated two deeds which were executed—the one by the appellant and her then husband to the appellee, Mary E. Jenkins, and the other by the appellees to the appellant. It appears that the appellant, Amanda L. Tifel, and the appellee, Mary E. Jenkins, are sisters; and daughters of Adam G. Erdman, who died in the month October, 1878; and by his will gave to his widow a life-estate in the whole of his property, and to an adopted daughter five hundred dollars. Subject to the life-estate of his widow, and before disposing of the residue of his estate, he made certain specific devises and bequests to his children, seven in number. To Amada L. Tifel, appellant, by her then name Wise, he gave a one undivided half interest in about 18 acres of land, unimproved, and to the appellee, Mary E. Jenkins, about two acres of land with improvements, both properties being in close proximity to Baltimore City. The deeds in question were executed in the way of making an exchange, between the parties entitled, of these two properties. At the time of the execution of the deeds in question the appellant was a married woman, her then husband being Silas Wise, who died in 1883. In 1886 she married her present husband, John Tifel, who appears in this suit as her next friend. The bill alleges that the appellant, Mrs. Tifel, executed the deed of exchange, because she was induced to do so by being worried and annoyed by her sister and her sister's husband, and her own husband, Wise, now deceased, while she was "in delicate health" and "extremely nervous;" that she did not know that she was, by executing the deed, divesting herself of title to and interest in the land devised to her by her father, but believed that she would, upon demise of

her mother, to whom the testator devised and bequeathed a life-estate in the whole of the property left by him, come into possession of the property so devised to her. She having been advised and believing "that no deed could affect her title if made during the term of the life-tenant; that she had no desire nor intention to make an exchange of property with her sister, "but her said sister and her sister's husband and her own husband, for purposes of their own, unduly influenced her to execute the said deed, taking advantage of her lack of business knowledge;" that the deed she executed "was not her free and voluntary act, having been obtained from her by fraud and undue influence practiced upon her by the defendants." It will be seen that the allegations of the appellant's bill are altogether vague and general, and nowhere point to any act or conduct on the part of anybody constituting or indicating the undue influence and fraud of which she complains beyond saying that she was worried and annoyed by the appellees and her husband.

The appellees answered the bill admitting the execution of the deeds as alleged in the bill and denying all the allegations therein made of fraud or undue influence; and further denying that they or the former husband of the appellant ever worried or annoyed her in reference to any exchange of the properties in question. They then aver that the transaction was fully understood by all the parties thereto; and that at the time of the execution of the deeds in question, making the exchange of properties as alleged, the property which was conveyed to the appellant in the exchange was more valuable than that which was conveyed by the appellant to the appellee, Mary E. Jenkins; but that the property so conveyed to the appellant has been permitted to deteriorate in value by neglect to keep the improvements thereon in repair and for this reason the appellant has become dissatisfied with the transaction involving the exchange of properties and now seeks to undo what "was fair and *bona fide* and her own voluntary act and deed." When we come to review the testimony we find that upon the part of the appellant quite as vague and indefinite as respects the fraud and undue influence which she charges

as are the allegations of her bill. She testified in her own behalf and said she was overpersuaded by her sister, the appellee, and her sister's husband and that she was threatened by her own husband. What the character of the persuasion was she does not state further than to say Mr. Jenkins, her sister's husband, told her that signing the deed " wouldn't amount to anything," and that her sister, Mrs. Jenkins, and her own husband said the same thing. She does not say what the threats were that she claims her husband made. They may have been of the most trivial character and certainly are not made to appear to be such as a Court can recognize as sufficient to so dominate her will as to render an act done under their influence invalid. When asked what happened when the papers (the deeds), were first opened on the day of the meeting for them to be executed she said, " I don't remember anything about them, because I was in such a worry of mind at the time. I cannot bring it to my mind that I signed anything." She describes no adequate cause for being in such an abnormal condition. And while there were several persons present on the occasion, to which she was referring, who could not have failed to observe anything unusual or of a character to have had so serious an effect as she alleges, not one testifies to anything of the kind. Under such circumstances a Court could not be expected to accept such a statement of her condition, as has just been quoted to influence its action. When asked upon cross-examination. " What do you mean by your sister having practiced fraud on you?" She merely answered " she took advantage of me." It would serve no useful purpose to refer more particularly or more at length to the testimony of the appellant as given by herself in support of her allegation of fraud and undue influence practiced upon her in respect to the execution of the deeds in question. What has already been referred to is a fair sample of its character and potency.

All that need be said of other evidence adduced on behalf of the appellant is that it by no means supplies the manifest defects of that given by the appellant herself. There are considerations suggested by the circumstances of the case that

make against the contention of the appellant. She would have it appear that the deeds she seeks here to have set aside were executed under compulsion by her then husband, yet neither she, herself, nor any other witness testifies to a single act of harshness or of cruelty towards her that he was ever guilty of. There appears no reason whatever for her having any such fear of him as might be supposed to have deprived her entirely of her free will in performing the act she now seeks to have undone ; and that she was exercising some judgment or choice in regard to it is evidenced by the fact that she asked her brother, who was one of her witnesses, before the exchange of properties was consummated, "if it (the exchange) would not be a good thing," without giving him even a suggestion at the time, as far as appears, that her husband was seeking to compel her to make the exchange. What adequate motive her husband could have had for going to the extreme of compulsion to get her to make the exchange of properties is not disclosed by the evidence. His selection of time, place and surroundings for the accomplishment of his purpose, if he desired to secure her execution of the deeds in question by compulsion and fear, was singular. The appellant, according to the testimony in the case, was one of a family of the most respectable and substantial people in the community, and who might therefore be expected to resent an outrage, of the sort that the appellant alleges, committed upon one of the members ; yet when the deeds here in question were to be executed her husband voluntarily took her to her mother's house where there were at least several, and according to some of the witnesses, all except one, of the members of the family assembled. Not one of them testifies to anything from which an inference, even, of compulsion and fear exerted upon her in connection with the execution of the papers can be drawn. The evidence further shows that the appellant was a widow for three years and therefore emancipated from the domination of her first husband ; and that since 1886 she has been under the protection of her present husband, and yet, not until now has anything been heard from her in the way of seeking relief from the imposition she claims

was practised upon her.  Her excuse that she had been told
the deed was not good and would not prevent her from claim-
ing her original property at the death of her mother is, to say
the least, not creditable to her.  She thus shows herself will-
ing to take and experiment with the property, for which she
exchanged, at the expense of her sister, believing when it
turned out unsatisfactory to her she could relinguish it and
resume possession of that which she had given in exchange.
She has waited to make the effort to avoid the transaction in
question until a number of the witnesses who could have
thrown light on it are dead and long enough for the facts in
connection with it to fade from the recollection of witnesses
who are living.  This detracts from the force of the testimony
she has adduced the extent and character of which have
already been adverted to.

As against the claim that in the exchange of properties a
fraud was perpetrated upon the appellant there is this circum-
stance ; that her father in his will obviously endeavored to
equalize the distribution of his property among his children
and he gave to the appellant the one undivided half-interest
in the property mentioned as devised to her and two thousand
dollars ; while to her sister he gave the property for which
the appellant exchanged and fifteen hundred dollars, thus in-
dicating that his judgment was that the lot and improvements
devised to Mrs. Jenkins were more valuable than the real es-
tate devised to the appellant.  There is some contradiction
among the witnesses examined in the case as to the relative
value of the two properties in question.  As respects the
question we are trying here the time at which this relative
value is to be fixed is the time of the exchange.  This was
about a year after the death of the father of the appellant and
Mrs. Jenkins.  How the properties compared in value at the
time of this exchange can be taken as more certainly indicated
by the competent and impartial judgment of this father seek-
ing to make a fair division of property among his children
than by witnesses who are testifying concerning values at this
distance of time from the date of the exchange, and doubtless
under more or less bias.  If we accept this judgment of the

father as establishing the true relation of these properties to each other in point of value, it goes far to relieve the appellee, Mrs. Jenkins, of the charge of fraud in making the exchange and to prepare us to accept as the real reason why she desired the exchange of properties the one she openly proclaimed, which was, that, for the reasons she gave in her testimony, she had conceived a prejudice against the property devised to her by her father's will and that she did not want to live there. The unsatisfactory character of the testimony adduced by the appellant in support of the vague and general allegations of her bill; the further considerations which have been noticed; and the distinct and emphatic contradiction of the appellant's testimony by that offered on the part of the appellees require the affirmance of the action of the Court below in decreeing that the bill of the appellant be dismissed. The case made by the appellant so clearly falls short, in the proofs submitted, of one justifying the interference of the Court with her solemn act in executing the deed here called in question that reference to legal authorities bearing upon the question presented for adjudication has been quite unnecessary. We need only say, we are not aware of any case in our Courts in which, upon a state of proof as we have here, such relief as is here sought has been granted.

Opinion by JONES, J., filed June 12th, 1901.

*Joseph C. France* (with whom was *H. E. Gilbert* on the brief), for the appellant.

*George G. Carey* (with whom was *John Glenn, Jr.,* on the brief,) for the appellee.